J-A12028-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| M.S.C., JR. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| L.M.D. | |
| | No. 3197 EDA 2015 |

Appeal from the Order September 18, 2015
In the Court of Common Pleas of Chester County
Civil Division, at No(s): 2014-05496-CU

BEFORE:  BENDER, P.J.E., PANELLA, J., and STEVENS[*], P.J.E.

MEMORANDUM BY PANELLA, J.                    **FILED SEPTEMBER 16, 2016**

M.S.C., Jr. ("Father") appeals from the order entered September 18, 2015, in the Chester County Court of Common Pleas, which denied his petition to modify custody and granted the petition to relocate of Mother ("L.M.D.") to Toms River, New Jersey, with respect to twins, S.R.D. and A.S.D., born in May 2009, and B.S.D., born in July 2011 (collectively, the "Children"). The order further awarded the parties shared legal custody, Mother primary physical custody, and Father partial physical custody of the Children every other weekend from Friday at 6:00 p.m. until Sunday at 6:00 p.m. In addition, the order provided that the Chester County Court of Common Pleas shall retain jurisdiction over this matter until the State of New Jersey becomes the home state of the Children under the Uniform Child

_____

[*] Former Justice specially assigned to the Superior Court.

J-A12028-16

Custody Jurisdiction and Enforcement Act ("UCCJEA"), 23 Pa.C.S.A. §§ 5401-5482.[1] We affirm.

The trial court summarized the relevant procedural and factual history, in part, as follows:

[L.M.D.] and [M.S.C.] are the parents of twins, [S.] and [A.], born [in May 2009], and [B.], born [in July 2011]. Mother and Father never married, and separated in 2011. Mother has been a stay-at-home mother and the primary caretaker of the [C]hildren since their birth. Under the custody order in effect at the time of trial, the parties shared legal custody of their [C]hildren, with Mother having primary physical custody and Father partial physical custody of the [C]hildren. That schedule gave Father custody of the [C]hildren for one overnight every other weekend and one evening per week.[2]

Father once earned a substantial income, but by 2015 his income had dropped from $150,000 per year to $10 per hour, and he could no longer provide adequate financial support for Mother and the [C]hildren. Mother had not worked outside the home since 2008, and the parties had amassed significant debt. The home that the parties purchased when they were together, and where Mother and the [C]hildren still lived, was in foreclosure, and was scheduled to be sold at sheriff's sale. Fortunately for Mother, her own mother owned a spacious home in Toms River, New Jersey, and invited Mother and the

_____

[1] Pursuant to order of November 2, 2015, upon motion of Father, the trial court stayed this provision regarding jurisdiction, pending appeal. **See** Order, 11/2/15.

[2] Under the order in effect at the time, entered on May 27, 2015, the parties had shared legal custody, Mother primary physical custody, and Father partial physical custody of the Children. Specifically, Father was awarded partial physical custody, during the school year, from Tuesday at 5:00 p.m. until 7:30 p.m. and every other weekend from Friday at 5:00 p.m. until Saturday at 8:00 p.m. and, during the summer, from Tuesday at 5:00 p.m. until 7:30 p.m. and every other weekend from Thursday at 5:00 p.m. until Saturday at 8:00 p.m. **See** Custody Order, 5/27/15.

- 2 -

[C]hildren to move in rent-free. Father had recently moved into his girlfriend's home in Oxford, [Pennsylvania].

On July 1, 2015, Mother filed an application requesting permission to relocate with the [C]hildren to her mother's home in Toms River, New Jersey. In her petition, Mother cited the benefits of relocation as providing a stable home for the [C]hildren, as well as the support of her extended family as Mother finished her college [degree] and increased her earning potential. Father objected to relocation, and requested that he be granted primary physical custody of the [C]hildren.[3]

A trial on both petitions began on September 9, 2015. Later that day, during the proceedings, Father suffered a cardiac event.[4] Trial recessed so that Father could be evaluated and treated at a hospital. Trial continued on September 23rd and was concluded on September 24, 2015. . . .

Trial court opinion, 11/5/15, at 1-3.

Over the course of the three hearings on the instant petitions, both Mother and Father testified on their own behalf. In addition, the court heard from creditor, Keith Kimmel; Paternal Grandmother, D.C.; and Father's girlfriend, with whom he resides, J.G.[5] Both parties were represented by

---

[3] Subsequent to receipt of Mother's notice of proposed relocation, Father filed a counter-affidavit objecting to Mother's relocation with the Children on June 1, 2015. Father additionally filed a petition to modify custody and to deny Mother's request to relocate on June 3, 2015. Father requested shared legal custody and primary physical custody of the Children.

[4] Father has atrial fibrillation, which was active at the time, and for which he testified he needs a cardioversion. Father additionally testified that he had recently lost fifty-one pounds due to a stomach condition for which he required surgery. **See** N.T., Hearing, 9/23/15, at 121-122.

[5] The court did not and was not requested by the parties, through counsel, to interview the Children. Opinion and Custody Order, 10/1/15, at 7.

- 3 -

counsel. Notably, upon resumption, Father was absent during portions of the proceedings due to his cardiac condition. ***See*** N.T., Hearing, 9/24/15, at 3.

By order of October 1, 2015, the trial court denied Father's petition to modify custody and granted Mother's petition to relocate to Toms River, New Jersey, with the Children. The court awarded the parties shared legal custody, Mother primary physical custody, and Father partial physical custody of the Children every other weekend from Friday at 6:00 p.m. until Sunday at 6:00 p.m. In addition, the order provided that the Chester County Court of Common Pleas shall retain jurisdiction over this matter until the State of New Jersey becomes the home state of the Children under the UCCJEA. The trial court's order, formatted as an opinion and custody order, analyzed each of the factors pursuant to §§ 5328(a) and 5337(h) and included findings of fact and determinations regarding credibility and weight of the evidence.

Father, through counsel, filed a timely notice of appeal, along with concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). Thereafter, the trial court filed an opinion pursuant to Pa.R.A.P. 1925(a)(2)(ii).[6]

On appeal, Father raises the following issues for review:

1. Did the [h]onorable [t]rial [c]ourt err in transferring jurisdiction to the state of New Jersey in violation of UCCJEA without taking any testimony concerning this point and

---

[6] The court's Rule 1925(a) opinion adopted its October 1, 2015 opinion and custody order which, as indicated, analyzed each of the custody and relocation factors pursuant to §§ 5328(a) and 5337(h), respectively.

without Defendant requesting this relief in her Petition for Relocation?

2. Did the [h]onorable [t]rial [c]ourt err in considering evidence not in the record by ruling that the parties shall exchange custody of the children at a location in Bellmawr, New Jersey, without any testimony or explanation as to that location?

3. Did the [h]onorable [t]rial [c]ourt err in repeatedly holding that Father's custodial time would be increased so as to "lessen any negative impact" of relocation when, in fact, it is decreased?

4. Did the [h]onorable [t]rial [c]ourt err in placing undue weight and drawing a negative inference concerning Father's health in that Father suffered a cardiac event during the first day of the hearing and was in active atrial fibrillation for the duration of the trial; however, Father testified that his illness is short term and not debilitating?

5. Did the [h]onorable [t]rial [c]ourt err in it's [sic] consideration of the relocation factors?

6. Did the [h]onorable [t]rial [c]ourt err in denying Father's Petition to Modify Custody to grant him primary custody?

7. Did the [h]onorable [t]rial [c]ourt err in failing to admit into evidence, or make a part of the record, the medical records of one of the children, despite Mother authenticating the records as being those she reviewed from the child's therapist?

8. Did the [h]onorable [t]rial [c]ourt err in giving undue weight to [M]other's role as primary care giver?[7]

Father's Brief, at 4.

Our standard of review with regard to a custody matter is well-settled:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings

_____

[7] The last two issues are noted as withdrawn by Father and are, therefore, not addressed.

of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*V.B. v. J.E.B.*, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

"When a trial court orders a form of custody, the best interest of the child is paramount." *S.W.D. v. S.A.R.*, 96 A.3d 396 (Pa. Super. 2014) (citation omitted). The factors to be considered by a court when awarding custody are set forth at 23 Pa.C.S. § 5328(a).

*E.R. v. J.N.B.*, 129 A.3d 521, 527 (Pa. Super. 2015).

Section 5328 provides as follows:

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

- 6 -

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.  A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

Further, in determining whether to grant relocation, the trial court must consider the following ten factors:

**§ 5337.  Relocation**

* * *

**(h) Relocation factors**—In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but

not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(h).

Turning to Father's first issue, Father questions whether the trial court erred in transferring jurisdiction to the State of New Jersey, in violation of the UCCJEA, without taking any testimony concerning this point and without Mother requesting this relief in her petition for relocation. Father argues that Mother did not seek to transfer jurisdiction and did not object to a stay of this provision of the court's order, nor did the court hear any testimony regarding this issue. **See** Father's Brief, at 24. Father additionally avers that the Children have significant contact with Pennsylvania, as they have lived in Pennsylvania all of their lives. **See id**. at 25. Likewise, Father indicates that he continues to reside in Pennsylvania, as does his extended family, and his custodial time with the Children is exercised in Pennsylvania. **See id**.

While disputing any error on behalf of the trial court, Mother indicates that there is no objection to Chester County retaining jurisdiction, as long as Father maintains residency in Chester County. ***See*** Mother's Brief, at 25.

With regard to a decision declining to exercise jurisdiction under the UCCJEA, absent an abuse of discretion, we will not disturb a trial court's decision not to exercise jurisdiction under the UCCJEA. ***See Merman v. Merman***, 603 A.2d 201, 203 (Pa. Super. 1992).

Section 5422 of the Domestic Relations Code provides, in part, as follows:

**(a) General rule.--**Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction), a court of this Commonwealth which has made a child custody determination consistent with section 5421 (relating to initial child custody jurisdiction) or 5423 (relating to jurisdiction to modify determination) has exclusive, continuing jurisdiction over the determination until:

(1) a court of this Commonwealth determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this Commonwealth and that substantial evidence is no longer available in this Commonwealth concerning the child's care, protection, training and personal relationships; or

(2) a court of this Commonwealth or a court of another state determines that the child, the child's parents and any person acting as a parent do not presently reside in this Commonwealth.

Further, § 5427 states:

**(a) General rule.--**A court of this Commonwealth which has jurisdiction under this chapter to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the

circumstances and that a court of another state is a more appropriate forum. The issue of inconvenient forum may be raised upon motion of a party, the court's own motion or request of another court.

Here, regardless of Father's continuing residency and exercise of his custodial time in Pennsylvania, we discern no abuse of discretion by transferring jurisdiction to New Jersey under the UCCJEA once the Children and Mother have resided in New Jersey for the appropriate period of time. Based on all evidence, Mother has been the Children's primary caretaker. Further, the trial court stayed this provision of its order pending this appeal. Therefore, this issue is without merit.

In his second issue, Father raises trial court error for considering evidence not in the record by ruling that the parties shall exchange custody of the children at a location in Bellmawr, New Jersey, without any testimony or explanation as to that location. Father avers that Mother did not present any evidence or make any proposal as to the location of the exchange and that the court made this decision based on factors not in evidence. **See** Father's Brief, at 25.

Mother indicates that at the start of trial she requested custodial exchanges at a midpoint between her proposed residence in Toms River, New Jersey, and Father's residence in Oxford, Pennsylvania, noting that exchanges took place at the New Garden Police Department.[8] **See** Mother's

_____

[8] We note that, per order entered August 11, 2014, subsequent to conciliation, custodial exchanges were to occur at the New Garden Police Department. **See** Custody Order, 8/11/14. **See also** N.T., Hearing, 9/24/15, at 187.

Brief, at 22. Moreover, Mother contends that in her proposed order attached to her closing argument[9] she proposed custodial exchanges at the Bellmawr Police Department. *See id*. at 23.  However, she suggests that a trial court may take judicial notice of certain information.[10] *See id*. at 22. "In this case, Mother proposed the Bellmawr Police Department to the [t]rial [c]ourt. However, the [t]rial [c]ourt would have been well within its authority to take judicial notice of the location on its own motion." *Id*. at 23. We agree.

In the instant matter, the certified record does not include Mother's proposed order attached to her closing argument.[11] Nonetheless, at the commencement of the hearing on September 9, 2015, counsel for Mother requested that the parties meet at a location in the middle for custodial exchanges, observing that the exchanges took place at the New Garden Police Department. *See* N.T., Hearing, 9/9/15, at 8. Counsel offered, "Mother would seek to have the parties meet in the middle for transportation. Currently, the exchanges take place at the New Garden Police Department for various reasons related to the case. We can find any police department at which the parties could meet." *Id*. Further, pursuant to

---

[9] While the certified record contains Mother's closing argument, a proposed order is not attached to the copy contained therein.

[10] Mother incorrectly cites Pennsylvania Rule of Civil Procedure 201, instead of Pennsylvania Rule of Evidence 201, in her brief.

[11] We acknowledge that we may only consider that which is in the certified record. *See Commonwealth v. Preston*, 904 A.2d 1, 6 (Pa. Super. 2006) (*en banc*).

- 12 -

Pa.R.E. 201, a trial court may take judicial notice of an adjudicative fact "generally known" or which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Pa.R.E. 201(a),(b). And a court may do so on its own accord. *See id*. at (c)(1). Hence, this issue fails.

Next, Father challenges the trial court suggesting that his custodial time would be increased so as to "lessen any negative impact" of relocation when, in fact, it was decreased. Father indicates that the trial court proposes, in considering § 5337(h)(1), (3), and (7), that the negative impact of relocation would be alleviated by increasing Father's custodial time. *See* Father's Brief, at 27. However, Father argues that the trial court "either misunderstood or disregarded" his work schedule, which includes working Sunday from 6:30 a.m. to 5:00 p.m. *Id*. As such, Father maintains that "his weekday custody was eliminated and he was given additional overnights during time when he would have to quit his job in order to exercise his custodial rights." *Id*. at 28. Father further recounts the logistical difficulties of maintaining contact and a relationship with the Children given the distance between his residence in Oxford, Pennsylvania, and Mother's proposed residence in Toms River, New Jersey. *See id*. at 27-28.

Here, the trial court stated its goal of providing Father with additional custodial time because of the relocation. *See* Trial Court Opinion and Custody Order, 10/1/15, at 3-5. In discussing § 5337(h)(1), the nature, quality, extent of involvement and duration of the child's relationship with

the party proposing to relocate and with the nonrelocating party, the court stated, "[t]he [C]hildren's relationship with Father will be altered somewhat in that he will no longer see the [C]hildren every Tuesday night as he currently does. He will, however, be granted additional custodial time with his children on weekends, holidays and vacations to ensure his consistent presence in his children's lives." *Id*. at 3.

In considering § 5337(h)(3), the feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties, the court expressed, "[w]e believe that Father's relationship with his children can be preserved and maintained through suitable periods of physical custody." *Id*. at 4.

Similarly, in considering § 5337(h)(7), whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity, the court concluded, "[i]n that the [C]hildren will be living with their Mother and grandmother in a stable environment, relocation benefits the [C]hildren. In that their Father will be living two hours away, relocation does not enhance his life or relationship with the [C]hildren. However, to lessen any impact, Father will be granted additional periods of partial physical custody." *Id*. at 5. Although Father testified to his work schedule, Father also testified that he was on disability and not working at the time. *See* N.T., Hearing,

9/23/15, at 140. While he anticipated returning to work, if and when was unknown. As a result, this issue is without merit.

In his fourth issue, Father asserts that the trial court erred by placing undue weight and drawing a negative inference concerning his health, despite his testimony that his illness is short term and not debilitating. Father argues, "[t]he only testimony before the court concerning Father's illness was that at the time of the hearing he was on short term disability but expected to return to work when his A Fib was controlled." Father's Brief, at 29 (citation to record omitted). Referencing the trial court's statement in its Rule 1925(a) opinion, "[o]f significance to our decision were Father's continuing health issues, and his almost total inability to articulate or demonstrate how granting him primary physical custody would benefit the [C]hildren," Father further disputes the court's denial of his request for primary custody and appears to extrapolate that the court directly correlated its decision with his health. *Id*. at 28-29 (citation omitted).

In the case at bar, a review of the record reveals that, on direct examination, Father testified as follows:

> Q. What is the state of your current health at the present time?
>
> A. Right now I'm in Afib. I'm going for a cardiac version (sic) on Tuesday, Chester County Hospital. I also need an operation on my stomach, the pyloric valve that come out of the stomach into the small intestine does not drain properly and my stomach retains fluid and I have lost 51 pounds since April 2nd.

Q. Do you believe that you are still healthy enough to proceed today?

A. I am going to try.

Q. And you were in Afib all last night?

A. Yes, I was. I'm still in it right now.

N.T., Hearing, 9/23/15, at 121-122. Father additionally testified that he was on short-term disability with his employer at the time, due to his atrial fibrillation, but that he anticipated to return. *See id*. at 140. However, this was speculative. Father's current health and employment status are unknown.

Likewise, of significance, the first day of the hearing was terminated due to Father's cardiac condition and, upon resumption, Father was not present for portions of the proceedings due to his continued cardiac condition. *See* N.T., Hearing, 9/9/15, at 105; N.T., Hearing, 9/24/15, at 3.

In considering the § 5328(a) custody factors, the court noted Father's medical condition where appropriate. In discussing § 5328(a)(12), each party's availability to care for the child or ability to make appropriate child-care arrangements, the court recounted that Father was not currently working due to medical issues. *See* Trial Court Opinion and Custody Order, 10/1/15, at 8-9. Further, in discussing § 5328(a)(15), the mental and physical condition of a party or member of a party's household, the court stated, "[i]n addition, Father's physical health is of great concern, his history of a-fib." *Id*. at 9.

Moreover, we do not read the sentence Father references from the trial court's Rule 1925(a) opinion to suggest that the court found Father's response to its inquiry regarding why he should be granted primary physical custody related to his health condition(s) or denied him primary physical custody specifically due to his health. Rather, we read this as two separate phrases or thoughts. Our reading is supported by review of § 5337(h)(8), the reasons and motivation of each party for seeking or opposing the relocation, in which the court noted, in part, "[h]owever, at the trial in this matter, Father was directly asked why he would make a better custodial parent and he responded that if Mother and children were to move to New Jersey the children 'would have no ordinary life.' When asked if he wished to expand on that answer, he declined." Trial Court Opinion and Custody Order, 10/1/15, at 5. Consequently, upon review, we discern no undue weight or negative inference.

With his fifth issue, Father contends that the trial court erred in its consideration of the relocation factors. As to § 5337(h)(2), the age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child, and the trial court's conclusion that "no significant special needs for any of the [C]hildren were identified," Father notes a defect in the court's reasoning. Father's Brief, at 31. Highlighting Plaintiff's (Father's) Exhibit 11, he states, "[n]ot only does it indicate that the [C]hildren have special needs but it also indicates Mother's

refusal to appropriately address those needs." ***Id***. Looking to § 5337(h)(5), whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party, Father cites eighteen examples of Mother's attempts to thwart his relationship with the Children. Likewise, as to § 5337(h)(8), the reasons and motivation of each party for seeking or opposing relocation, Father suggests that the court did not address any of the testimony elicited from Father and his witnesses regarding Mothers' motivation, which he submits is her desire to remove him from the Children's lives. ***See id***. at 36. Father further addresses undue emphasis placed on his response to the court's inquiry why he would make a better custodial parent. ***See id***. at 37-40.

As we interpret his challenge to the trial court's order, Father, in essence, questions the trial court's conclusions and assessments and seeks for this court to re-find facts, re-weigh evidence, and/or re-assess credibility to suit his view of the evidence. This we cannot do. Under the aforementioned standard of review applicable in custody matters, the trial court's findings of fact and determinations regarding credibility and weight of the evidence are not disturbed absent an abuse of discretion. ***See E.R.***, 129 A.3d at 527. As we have stated:

> It is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, given [sic] due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion. . . .

*King v. King*, 889 A.2d 630, 632 (Pa. Super. 2005) (quoting *Hanson v. Hanson*, 878 A.2d 127, 129 (Pa. Super. 2005)).

Here, the trial court carefully analyzed and addressed each factor under § 5337(h) in considering Mother's request for relocation. The court concluded, "[w]e have also fully considered that petition of [Mother] for relocation in light of the testimony presented, and after a careful review of the statutory factors we will grant Mother's petition to relocate. . . ." Trial Court Opinion and Custody Order, 10/1/15, at 1. After review of the record, we determine that the trial court's findings and determinations regarding relocation are supported by competent evidence in the record, and we will not disturb them. *See E.R.*, 129 A.3d at 527.

Lastly, Father challenges the trial court's denial of his petition to modify custody requesting primary custody. Father once more posits that the court ignored examples of Mother's attempts to reduce his role in the Children's lives. *See* Father's Brief, at 40. In addition, Father avers that the court disregarded evidence regarding the Children's behavior and Mother's actions related thereto. *See id*. at 41-42. Father states, "[t]he [c]ourt completely ignore[d] Mother's own admissions with regard to the [C]hildren's behavior in her presence, as confirmed by the Holcomb records and [P]aternal [G]randmother. Mother's recitation of her idyllic existence with the [C]hildren is contradicted by her own words to Holcomb and by the observations of [P]aternal [G]randmother." *Id*. at 42. Likewise, Father emphasizes Mother's financial instability. *See id*. Father also points to

evidentiary support for his petition, in contravention to the trial court's finding. *Id*. at 41-42.

> The [c]ourt's conclusion that Father offered little evidence as to this factor does not comport with the record. Father testified that he is gainfully employed and if his proposed living arrangements with [Father's girlfriend] need to be changed he has the ability to provide a stable environment for the [C]hildren. He testified to his attempts at involvement in their lives, including signing on as assistant soccer coach. Paternal Grandmother identified numerous photographs of Father and the children at sporting events, Christmas at Longwood, Easter with family members, swimming with them, birthday parties and a dinner with his great uncle. [Father's girlfriend] testified that she was prepared to open her home to the [C]hildren. She explained her observations of the [C]hildren and their father and further cited other examples of Father's relationship with them stating that the [C]hildren "…continually tell him they love him and they hang on him." She also identified photos of Father and the [C]hildren and testified to his taking care of them while they are in his custody. Father, [Paternal Grandmother and Father's Girlfriend] testified that none of the [C]hildren exhibited any anxiety during the custody transitions. The [C]hildren were quiet and non-communicative until Mother closed the care door after putting them in their car seats. Once Mother shut the car door, the [C]hildren became happy and affectionate. All three testified to their observations that the [C]hildren are happy and content with [F]ather and do not exhibit any of the oppositional issues of which Mother complains with regard to [A.]. The [c]ourt's conclusion is simply not supported by the evidence and testimony.

*Id*. at 42-43 (citations to record omitted).

As we interpret this contest to the trial court's order, Father, again, in essence, questions the trial court's conclusions and assessments and seeks for this court to re-find facts, re-weigh evidence, and/or re-assess credibility to suit his view of the evidence, which we cannot do.

The trial court carefully analyzed and addressed each factor under § 5328(a). As summarized by the court, "[w]e have considered the best interest of the [C]hildren, based on all of the evidence presented, and conclude that Father's request for primary physical custody (contained in his answer to Mother's relocation petition) must be denied as Father's reasons, stated in his testimony, are palpably inadequate to support his request." Trial Court Opinion and Custody Order, 10/1/15, at 1. Hence, upon review, we determine that the trial court's findings and determinations regarding the custody factors are supported by competent evidence in the record, and we will not disturb them. *See E.R.*, 129 A.3d at 527.

Accordingly, for the foregoing reasons, we affirm the order of the trial court denying Father's petition to modify and granting Mother's petition to relocate with the Children to Toms River, New Jersey.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/16/2016