J-A33017-14

2015 PA Super 260

| E.R., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| v. | : | |
| | : | |
| | : | |
| J.N.B., | : | |
| | : | |
| Appellee | : | No. 168 EDA 2014 |

Appeal from the Order Entered December 4, 2013,
in the Court of Common Pleas of Lehigh County,
Civil Division, at No(s): 2011-FC-0511

BEFORE:   LAZARUS, WECHT, and STRASSBURGER, JJ.*

OPINION BY STRASSBURGER, J.:                    **FILED DECEMBER 14, 2015**

E.R. (Father) appeals from the custody order entered December 4, 2013, wherein the trial court granted J.N.B. (Mother) primary physical custody of the parties' child, X.R. (Child). In addition, Father challenges the June 25, 2013 order that precluded Joseph P. Maher, Esquire from representing him in the custody matter. After review, we affirm.

Mother and Father are the natural parents of Child, who was born out of wedlock on July 12, 2010. Father commenced the underlying custody action by filing a complaint on April 12, 2011. Thereafter, on May 9, 2011, the parties agreed to a custodial arrangement providing for shared legal custody of Child. Through this arrangement, Mother was entitled to primary physical custody, and Father was granted partial custody on alternate

---

*Retired Senior Judge assigned to the Superior Court.

weekends, with one overnight visit during the week following his custodial weekend.

On June 27, 2011, Father filed a petition for contempt and modification, which was later withdrawn. On February 12, 2012, Father filed a second petition for contempt and modification. On March 5, 2012, following a custody conference, the parties agreed to an interim order that expanded Father's partial physical custody period to Sunday evening through Tuesday evening of each week. Those terms were adopted as a final order by the parties on August 1, 2012.

On April 14, 2013, Father again petitioned for modification, seeking equal physical custody of Child. On May 14, 2013, Attorney Maher entered his appearance on behalf of Father. On June 25, 2013, a status conference was held, at which time Father withdrew his petition for modification. Additionally, on that date, Mother petitioned for the disqualification of Attorney Maher on the basis that he had represented Mother on two prior unrelated matters, and thus possessed confidential knowledge of her finances and personal life relevant to the parties' ongoing custody and support disputes. By order filed on June 27, 2013, the trial court granted

Mother's petition for disqualification and precluded Attorney Maher from representing Father.[1]

Following the June 25, 2013, status conference, Mother filed a petition for modification. Father responded by filing an emergency petition for special relief on July 15, 2013. On July 16, 2013, Mother filed a petition for contempt alleging that Attorney Maher had violated the court's June 27, 2013 order by filing motions on Father's behalf and contacting Mother's counsel with a proposed settlement agreement. On August 28, 2013, Mother filed an amended petition for contempt. Attorney Maher filed a response.

On September 6, 2013, a hearing was held on Mother's contempt petitions. On September 18, 2013, the case proceeded to a pretrial conference on Mother's petition for modification. Subsequently, by order dated September 26, 2013, the court directed Mother and Father to submit to psychological evaluations.[2] By order filed September 27, 2013, the trial court held Attorney Maher in contempt and ordered him to pay a fine of $250, plus attorney's fees.

---

[1] On July 10, 2013, Attorney Maher filed a motion to reconsider the June 27th order. The trial court denied that motion on July 15, 2013. On July 26, 2013, Attorney Maher filed a notice of appeal with this Court, docketed at 2192 EDA 2013, which was quashed as interlocutory on August 27, 2013. Attorney Maher's application to this Court for reconsideration was denied on September 20, 2013, and on December 2, 2013, our Supreme Court denied his petition for allowance of appeal.

[2] Mother presented for her psychological evaluation; however, Father failed to appear.

The parties' custody trial commenced on December 3, 2013. Father represented himself, while Mother was represented by counsel. At trial, the lower court heard testimony from Mother, Father, and Father's mother. On December 4, 2013, the court entered an order granting primary physical custody to Mother and partial physical custody to Father.

On January 3, 2014, Father, through Attorney Maher, timely filed a notice of appeal to this Court. Additionally, in accordance with Pa.R.A.P. 1925(a)(2), Father, again through Attorney Maher, filed a concise statement of errors complained of on appeal.

On February 19, 2014, this Court issued a rule to show cause why the instant appeal should not be quashed due to Attorney Maher's continued representation of Father in defiance of the trial court's June 27, 2013 order. On March 3, 2014, Father filed a response. By *per curiam* order dated March 5, 2014, the rule to show cause was discharged, and the issue of the propriety of the instant appeal was deferred to the merits panel for disposition.[3]

In his brief on appeal, Father raises the following issues for our review.

1. Whether the trial court committed an error of law and/or an abuse of discretion in precluding [Father's] counsel from

---

[3] By order dated February 20, 2015, we remanded this case to the lower court for completion of the record and supplemental trial court opinion. The record and supplemental opinion were received by this Court on November 2, 2015.

representing him in this matter due to an alleged conflict pursuant to Rule of Professional Conduct 1.9, having represented [Mother] in a [PFA action] against her father and in an unemployment compensation matter, both final, when those matters and the present matter are not substantially related, the subject matter of those matters and the present matter were in the sphere of general knowledge including that of [Father], there had been a waiver by [Mother] of this alleged conflict by the fact that she did not raise said issue in prior proceedings before the trial court thus waiving same, and her presentation of her initial petition to preclude was filed in violation of [Lehigh County Local Rules of Civil Procedure] 208.3(b)?

B. Whether the trial court committed an error of law and/or an abuse of discretion by limiting [Father's] partial physical custody of the minor child … in its December 4, 2013, order to supervised physical custody at [Father's] sole expense, simply because he has been charged in the State of New York with endangering the welfare of a child, but not found guilty of such offense, which he denies, in violation of his constitutional right to be presumed innocent until proven guilty and by the trial court assuming [Mother's] version of that incident is true when the official police record and other uncontracted [*sic*] facts prove several of [Mother's] statements regarding that incident as false, *e.g.* the child left the vehicle with [Father] upon arrival in [New York City] and never returned to it and the police allege that the subject hand gun was in "plain view"?

C. Whether the trial court committed an error of law and/or an abuse of discretion in failing to have the trial court's staff, particularly, the clerk of judicial records — civil division, cease and desist from its practice of having all Lehigh County mail, [including] particularly the trial court's final orders, including the order *sub judice*, sent to Reading, Pennsylvania for subsequent re-mailing, such operating as a violation of Pa.R.A.P. 108(a), by such re-mailing creating a clear and dinstnct disadvantgage [*sic*] to [Father] and all other similarly situated Lehigh County litigants adversely affected by the aforesaid re[-]mailing creating a delay in their receipt and ability to response [*sic*] to said order?

Father's Brief at 4-5 (unnecessary capitalization and suggested answers omitted).

Before we reach the merits of Appellant's substantive issues, we must first address the issue raised in the rule to show cause. Attorney Maher, through Father, contends that this Court's decision in **Vertical Resources Inc., v. Bramblett**, 837 A.2d 1193 (Pa. Super. 2003) and our Supreme Court's decision in **Vaccone v. Syken**, 899 A.2d 1103 (Pa. 2006), support his claim that precluded counsel may continue to advocate on appeal. We disagree with counsel's interpretation of those cases.

Both **Vertical Resources** and **Vaccone** address the appealability of orders precluding counsel.

> **Vertical Resources** was a creditor/debtor case, in which the debtor, an indigent single mother, was represented by an attorney who had agreed to represent her in a fee arrangement with a maximum limit of $5,000. A panel of the Superior Court decided that, under the unique facts of that case, the debtor's right to proceed would be irreparably lost if the disqualification order were not immediately reviewed because she could not afford other counsel. The panel concluded that the debtor's right to be represented by counsel was a right too important to be denied review, and thus appellant presented facts that met both the second and third prongs of the collateral order doctrine.

**Vaccone**, 899 A.2d at 1106-07 (citations and footnote omitted). Finding the preclusion order was an appealable collateral order, the Court in **Vertical Resources** went on to address the appellant's claim regarding disqualification of counsel on the merits.

In **Vaccone**, our Supreme Court addressed "the question of whether an order disqualifying trial counsel in a civil case is an interlocutory order, which is not immediately appealable." **Vaccone,** 899 A.2d at 1105. The Court specifically declined to extend the holding in **Vertical Resources**, stating that it agreed with the Superior Court that **Vertical Resources** "was decided based on its own particular facts, and does not warrant a wholesale application of the collateral order doctrine to attorney disqualification orders." **Id.** at 1107. Accordingly, the **Vaccone** Court determined that disqualification orders are usually interlocutory and not immediately appealable. **See also Karch v. Karch**, 879 A.2d 1272 (Pa. Super. 2005) (quashing order disqualifying counsel from representing husband in ongoing custody and divorce case on basis that the order was interlocutory and, thus, not immediately appealable).[4]

We recognize that precluded counsel represented his respective client on appeal in both **Vaccone** and **Vertical Resources**. However, neither decision grants precluded counsel leave to continue representation of a client **beyond appealing the preclusion order**. Rather, both decisions merely determine the appropriate time to raise that issue on appeal. Instantly, now that there is a final order in the underlying custody case, the trial court's

---

[4] Attorney Maher's appeal to this Court from the trial court's June 27, 2013 order was denied on precisely this basis.

June 27, 2013 preclusion order is ripe for appellate review. The holdings in **Vertical Resources** and **Vaccone** do not affect that procedural posture, nor do they justify in any way Attorney Maher's continued representation of Father as to any issue other than the disqualification order.

Instead of appealing the preclusion issue separately, as would be procedurally and ethically proper at this point, Attorney Maher has continued in his malfeasance by bringing the instant appeal on behalf of both himself and Father. We cannot stress enough our condemnation of Maher's continued disregard for the trial court's orders. Upon the return of this custody matter to the trial court, we recommend the court explore disciplinary action and additional sanctions as it sees fit. Nonetheless, we will not punish Father for his counsel's actions and will proceed to address the issues raised in the appeal on the merits.

Father first challenges the propriety of the June 25, 2013 trial court order disqualifying his counsel. Specifically, he argues that Mother failed to establish that a conflict of interest existed in Attorney Maher's representation because (1) there was no substantial relationship between the cases for which Attorney Maher represented Mother and the present case and (2) Attorney Maher was not privy to any confidential information that Father did not already know. Father's Brief at 14-15.

> When reviewing a trial court's order on disqualification of counsel, we employ a plenary standard of review. Courts may

disqualify attorneys for violating ethical rules. On the other hand, courts should not lightly interfere with the right to counsel of one's choice. Thus, disqualification is appropriate only when both another remedy for the violation is not available and it is essential to ensure that the party seeking disqualification receives the fair trial that due process requires.

***Weber v. Lancaster Newspapers, Inc.***, 878 A.2d 63, 80 (Pa. Super. 2005) (citations omitted).

The trial court found that that an actual conflict of interest existed in this case due to Attorney Maher's violation of Rule of Professional Conduct 1.9(a), which provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent." The trial court explained its determination as follows.

> The Explanatory Comment to [Rule of Professional Conduct 1.9(a)] states in pertinent part as follows:
>
> > [1] After termination of a client-lawyer relationship, a lawyer has certain continuing duties with respect to confidentiality and conflicts of interest and thus may not represent another client except in conformity with this rule.
> >
> > * * *
> >
> > [3] Matters are "substantially related" for purposes of this Rule if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would

> normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter. For example, a lawyer who has represented a businessperson and learned extensive private financial information about that person may not then represent that person's spouse in seeking a divorce.
>
> As Mother testified, during the course of Attorney Maher's representation of her in a PFA action against her father and in her unemployment compensation matter he learned her emotional background and limits and her financial background, all of which would be relevant in her custody action and support action with Father. Mother has not consented to Attorney Maher representing Father in these matters; in fact, she views it as a breach of trust and, in her words, is "disgusted, and uncomfortable, and appalled."

Trial Court Order, 9/26/2013, at 2 n.1.

We agree with the trial court's analysis. Under these circumstances, Attorney Maher's prior representation of Mother poses a substantial risk that confidential information may be used in Father's favor in the present litigation. Thus, disqualification of Attorney Maher was necessary to ensure that Mother received the fair trial that due process requires. **Weber, supra**.

Father also contends that Mother waived her objection by failing to comply with Lehigh County Local Rule of Civil Procedure 208.3(b). Father's Brief at 13. Under the Rule, motions "shall be filed with the Clerk of Courts, Civil Division, and shall be accompanied by a supporting brief." Leh.R.C.P. No. 208.3(b)(2). The party filing the motion shall serve a complete copy on all counsel of record. Leh.R.C.P. No. 208.3(b)(3). Importantly, the Rule

specifically provides that the trial court "in its discretion may strike, dismiss or deny any motion for failure to comply with the service and certification requirements of this rule." *Id.* Father's cursory argument that Mother failed to follow the local rule by filing a supporting brief with her motion to preclude fails to persuade us that the trial court abused its discretion by refusing to deny, dismiss, or strike Mother's motion. Accordingly, he is not entitled to relief.

Father next claims that the trial court erred in granting Mother's petition for modification of custody. We address Father's issue mindful of our well-settled standard of review.

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*V.B. v. J.E.B.*, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

"When a trial court orders a form of custody, the best interest of the child is paramount." *S.W.D. v. S.A.R.*, 96 A.3d 396 (Pa. Super. 2014)

- 11 -

(citation omitted). The factors to be considered by a court when awarding custody are set forth at 23 Pa.C.S. § 5328(a).

> **(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>
> (3) The parental duties performed by each party on behalf of the child.
>
> (4) The need for stability and continuity in the child's education, family life and community life.
>
> (5) The availability of extended family.
>
> (6) The child's sibling relationships.
>
> (7) The well-reasoned preference of the child, based on the child's maturity and judgment.
>
> (8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.
>
> (9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.
>
> (10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).[5]

Instantly, the trial court found none of the factors in favor of Father. Rather, the court determined that a number of factors, specifically 3, 4, 10, 12 and 16, weighed against Father. With respect to those factors, the trial court explained that Father had only been involved peripherally in performing parental duties on behalf of Child, due in large part to the partial custody schedule; however, the court determined that there was no

---

[5] Section 5328 has been amended to include an additional factor at 23 Pa.C.S. § 5328(a)(2.1) (relating to consideration of child abuse and involvement of protective services). Because Father's petition for custody review was filed prior to January 1, 2014, the effective date of Section 5328(a)(2.1), that factor does not apply to the instant case. **See** § 6 of 2013, Dec. 18, P.L. 1167, No. 107, effective 1/1/14. Nonetheless, the trial court addressed this factor and concluded that it was not applicable to this case. Supplemental Trial Court Opinion, 3/20/2015, at 2.

indication that Father had participated in Child's therapy sessions for her physical disability, or that "he has the desire, ability, or would be appropriate to care for [Child] for any length of time." Supplemental Trial Court Opinion, 3/20/2015, at 3. In weighing the factors against Father, the trial court took into consideration Father's admitted mental health issues and his refusal to comply with a court order for a psychological evaluation. *Id.* Finally, the trial court found that Father was "less than forthcoming" regarding his sources of income and "offered no evidence that he had adequate financial resources to care for Child." *Id.* at 5.

By contrast, the trial court determined that the majority of factors, 1, 2, 3, 4, 5, 9, 10, 12, and 15, weighed in favor of Mother.[6] The court found that Mother was gainfully employed and had, over the course of Child's life, demonstrated an ability and willingness to care for Child's daily needs, including her physical therapy. *Id.* at 3, 4. Further, the court found that despite the high level of conflict and allegations of abuse between the parties, Mother was more likely to encourage a positive relationship between Child and Father. *Id.* at 5. The trial court also cited favorably Mother's willingness to follow the court's orders. *Id.*

---

[6] The trial court determined that the remaining factors were either inapplicable or did not weigh in favor of either parent. Further, with respect to factor 13, the trial court noted that there was a high level of conflict between the parties.

J-A33017-14

Based on our review of the record, we find no error in the trial court's grant of Mother's petition for modification of custody. Limiting Father to supervised custody was appropriate under the circumstances presented. Accordingly, Father is not entitled relief.[7]

---

[7] In his brief, Father contends that the trial court erroneously relied upon conduct charged in New York to restrict Father's period of custody. The trial court explained the facts of that situation as follows.

> [In her trial testimony, Mother] explained that she agreed to travel to New York City with Father to visit his ailing father [on April 27, 2013]. Upon arriving in New York City, Father parked the car illegally at the Port Authority bus terminal, claiming he had to use the lavatory. Unbeknownst to Mother, however, Father had placed Mother's handgun in the vehicle and, after he had gone into the bus terminal with [Child], notified the police that Mother had an illegal gun in the parked car. As a result of Father's actions, the police swarmed her car and Mother was arrested and sent to New York's prison located on Riker's Island, where she spent a night before being released on bail posted by her mother.
>
> Although the charges against her were dismissed, [at the time of the December 3, 2014 custody trial, Father had been] indicted in New York for criminal possession of a firearm and endangering the welfare of a child.

Trial Court Opinion, 2/26/2014, at 5-6. Contrary to Father's argument, this incident was not the sole basis for the trial court's grant of Mother's request for modification. While the record does reflect that the trial court properly credited Mother's testimony that the New York incident, combined with the parties' tumultuous relationship and Father's prior indecent assault convictions, "led her to conclude that Father is 'dangerous, manipulative [and] unstable,'" we note that its custody determination was based on an evaluation of the circumstances surrounding all 16 custody factors, and not just the incidents Father cites. *Id.*

- 15 -

For all of the foregoing reasons, we affirm both the trial court's June 27, 2013 and December 3, 2014 orders.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary


Date: 12/14/2015