J-S39029-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CARSON GROLLER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JESSICA FLORES N/K/A JESSICA | : | |
| FREED | : | |
| | : | No. 1875 EDA 2025 |
| Appellant | : | |

Appeal from the Order Entered July 7, 2025
In the Court of Common Pleas of Lehigh County Civil Division at No(s):
2015-FC-1680

BEFORE:  STABILE, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED MARCH 18, 2026**

Appellant Jessica Flores n/k/a Jessica Freed (Mother) appeals from the order modifying the physical custody schedule for B.G. (Child), Mother's and Appellee Carson Groller's (Father) ten-year-old child.  On appeal, Mother claims that the trial court abused its discretion in weighing the evidence when evaluating Mother's proposed custody agreement.  We affirm.

By way of background, the trial court summarized the underlying facts of this case as follows:

> The parties are the parents of [Child], born [in] 2015[,] . . . and share legal custody [and previously] shared physical custody on a 2-2-3 schedule rotating weekly.  Both parties [] filed modification petitions seeking primary physical custody.  The [trial] court held a custody trial on March 12, 2025 and June 6, 2025[.]
>
>                    *         *         *
>
> [The prior] physical custodial arrangement was agreed to by the parties in 2022, when [Child] was nearly seven years old.  Prior

to trial, the parties may have orally agreed to a week on/week off custody schedule[] but[,] ultimately, because a complete agreement could not be reached on all issues, a custody trial was necessary.

Trial Ct. Mem., 7/7/25, at 1-2.

The trial court held hearings on March 12, 2025 and June 6, 2025. Mother, Father, and Lehigh County Office of Children and Youth Services social worker Martin Baddick, were among the witnesses who testified at the hearings. *See* N.T., 3/12/25; N.T., 6/6/25. On July 7, 2025, the trial court entered an order modifying the custody arrangement from a 2-2-3 rotating basis to a week on/week off schedule, declining to award primary physical custody to either parent and maintaining an equal shared physical custody schedule. The trial court also issued a memorandum addressing the custody factors set forth in the Custody Act at 23 Pa.C.S. § 5328(a). *See* Trial Ct. Mem., 7/7/25. After Mother filed a timely notice of appeal and an untimely Pa.R.A.P. 1925(a)(2)(i) statement, the trial court issued a Pa.R.A.P. 1925(a) opinion addressing Mother's claims.[1]

On appeal, Mother raises the following claims:

---

[1] We note that in this children's fast track matter Mother failed to file a statement of errors with her *pro se* notice of appeal on July 17, 2025, as required by Pa.R.A.P. 1925(a)(2)(i). On July 25, 2025, however, Mother's counsel entered his appearance and filed a Rule 1925(a)(2)(i) statement. While the late filing of Mother's statement of errors is a procedural defect, it "does not affect the validity of the appeal." *In re K.T.E.L.*, 983 a.2D 745, 474 (Pa. Super. 2009); *see also* Pa.R.A.P. 1925(a)(2)(i).

1. Did the trial court err by misapplying the burden of proof to [Mother]?

2. Did the trial court abuse its discretion by denying [Mother's] petition for modification of custody?

3. Did the trial court abuse its discretion by reaching conclusions of law based on factual findings unsupported by the evidence of record?

Mother's Brief at 6 (some formatting altered).

We address Mother's claims together. The crux of Mother's arguments is that the trial court's rejection of her proposed custody modification was against the weight of the evidence. *Id.* at 17-18, 25 (citations omitted). Mother argues that the trial court erred in focusing on whether she had proven her specific allegations and, in doing so, failed to adequately apply the custody factors from the Child Custody Act to determine Child's best interests. *Id.* at 17-22. Mother also argues that the trial court's conclusions are unreasonable in light of its factual findings. *Id.* at 26. Mother contends that the trial court erred in finding that "neither party had met their burden of proof" and that the trial court weighed Child's preference too heavily in that it "ultimately overrode all of the custody factors." *Id.* at 35 (citation omitted).

Our standard of review for custody modification orders is as follows:

[i]n reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether

the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law[] or are unreasonable in light of the sustainable findings of the trial court.

*E.R. v. J.N.B.*, 129 A.3d 521, 527 (Pa. Super. 2015) (citation omitted); *see also R.L. v. M.A.*, 209 A.3d 391, 395 (Pa. Super. 2019) (explaining that "a trial court abuses its discretion if, in reaching a conclusion, it overrides or misapplies the law, or the record shows that the trial court's judgment was either manifestly unreasonable or the product of partiality, prejudice, bias or ill will" (citation omitted and some formatting altered)). We apply a deferential standard of review to claims of abuse of discretion, as it is not this Court's role to "re-find facts, re-weigh evidence, and re-assess credibility." *Wilson v. Smyers*, 284 A.3d 509, 520 (Pa. Super. 2022) (citation omitted). On appeal, "[t]he parties cannot dictate the amount of weight the trial court places on evidence" and "[a]ppellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough." *R.M.G., Jr. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa. Super. 2009) (citation omitted).

The paramount concern in any custody case decided under the Child Custody Act is the best interests of the child. *See* 23 Pa.C.S. §§ 5328(a), 5338(a). "The best-interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being." *Taylor*, 302 A.3d at 207 (citation omitted and some formatting altered). Section 5328(a) sets

forth the best interest factors that a trial court must consider in awarding custody. *See E.R.*, 129 A.3d at 527.

Section 5328(a) of the Act provides as follows:

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving substantial weighted consideration to those factors specified under paragraphs (1), (2), (2.1) and (2.2) which affect the safety of the child, including the following:

(1) Which party is more likely to ensure the safety of the child.

(2) The present and past abuse committed by a party or member of the party's household, which may include past or current protection from abuse or sexual violence protection orders where there has been a finding of abuse.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(2.2) Violent or assaultive behavior committed by a party.

(2.3) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party if contact is consistent with the safety needs of the child.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life, except if changes are necessary to protect the safety of the child or a party.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's developmental stage, maturity and judgment.

(8) The attempts of a party to turn the child against the other party, except in cases of abuse where reasonable safety

measures are necessary to protect the safety of the child. A party's reasonable concerns for the safety of the child and the party's reasonable efforts to protect the child shall not be considered attempts to turn the child against the other party. A child's deficient or negative relationship with a party shall not be presumed to be caused by the other party.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

*     *     *

**(a.2) Determination.--**No single factor under subsection (a) shall by itself be determinative in the awarding of custody. The court shall examine the totality of the circumstances, giving weighted consideration to the factors that affect the safety of the child, when issuing a custody order that is in the best interest of the child.

23 Pa.C.S. § 5328(a), (a.1).[2]

"[W]hen explaining its conclusions as to the section 5328(a) factors, the trial court necessarily resolve[s] conflicts in testimony and [makes] credibility determination[s]." **M.J.M. v. M.L.G.**, 63 A.3d 331, 336 n.6 (Pa. Super. 2013). In considering the factors set forth in Section 5328(a), "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." **Taylor v. Smith**, 302 A.3d 203, 208 (Pa. Super. 2023) (citing, *inter alia*, **M.J.M.**, 63 A.3d at 336 (citations omitted)).

Here, the trial court stated that it "weighed the custody factors" and "considered whether [Mother's] evidence established [that her] proposed custody modification was in the best interest of [Child]." Trial Ct. Op., 8/11/25, at 2 (citing Trial Ct. Mem., 7/7/25). The trial court addressed each custody factor set forth in the Act, finding all but one factor to be neutral between the parties, or inapplicable. **See** Trial Ct. Mem., 7/7/25, at 2-6.

_____

[2] These were the custody factors in effect at the time of hearing and when the trial court made its decision. Effective August 29, 2025, our Legislature amended Section 5328(a). **See** 23 Pa.C.S. § 5328 (amended June 30, 2025, P.L. 18, No. 11, § 1, effective in 60 days). In the event of amendments to the Child Custody Act, for "evidentiary proceedings [that] commence[] on or after the effective date of the Act, the provisions of the Act apply even if the request or petition for relief was filed prior to the effective date." **C.R.F. v. S.E.F.**, 45 A.3d 441, 445 (Pa. Super. 2012); **see also** 23 Pa.C.S. § 5328(a). Therefore, "it is the date of the commencement of the hearing that determines whether the [amended] Act applies, not the date the petition or complaint was filed." **C.R.F.**, 45 A.3d at 445.

Specifically, the trial court explained:

[B]oth parties provide appropriate structure and home environment for [Child]. The essence of the dispute concerns Mother's frustration with Father's lack of communication and her belief that Father improperly ceded parental responsibilities to other persons and/or may not [have] properly supervise[d Child]. Mother's concerns with supervision were not supported by . . . evidence [the trial] court finds credible. [Child] is capable of making short walks to the bus stop with his friends from school without needing adult supervision. He certainly can ride his bike, and is capable of operating an ATV with appropriate safety gear and supervision. During his periods of custodial time, Father is allowed to arrange activities for [Child] like summer camp, as long as it does not interfere with Mother's periods of shared custody. Mother has described Father as being a very involved parent until his most recent, and now ended, relationship with his former partner. The [trial] court agrees with Mother that a third-party parental figure in Father's home may create parenting challenges for her, but Mother bears the responsibility of initiating the difficult conversation with Father directly if she feels this is an issue and that person's parental role can be defined to the benefit of [Child]. The [trial] court has no doubt that Mother's concerns with Father's former girlfriend or Father's alleged lack of communication or supervision are based upon a sincere desire to protect [Child], but the evidence at trial does not establish that Mother's allegations are, in fact, true. [The trial] court otherwise finds such evidence by Mother to be incredible and unpersuasive. [Child] reportedly had a very positive connection with Father's former girlfriend, and was genuinely sad when the relationship ended.

While it is commendable that Mother prefers to stay at home to be available for [Child], Father should not be penalized for needing [the] assistance of other family members when he is working or otherwise engaged in activities. There is no evidence that these alternative caregivers are in any way harmful, and it appears [Child] enjoys his time with these individuals. While in Father's care, [Child] participates in outdoor activities like swimming, and attends summer camp. The parties certainly are encouraged to be flexible and reasonable in accommodating a request to modify or change the custodial schedule, but in an agreement cannot be reached, the aggrieved parent should not inform [Child] about the conflict. [Child] is attending weekly counseling due to certain emotional issues. Placing him in the middle of ongoing parental

- 8 -

conflict does not demonstrate good and effective co-parenting. Moreover, this parental behavior is immature and does not promote [Child's] emotional well-being.

*Id.* at 7-8 (some formatting altered).

Ultimately, the trial court concluded that Mother's evidence was not credible and explained that, in large part because the parties live approximately one mile from one another and in the same school district, a shared custodial arrangement on a week on/week off schedule best served the interests of Child, "rather than the rotating 2-2-3 basis, which [was] inconvenient and more confusing for Child." Trial Ct. Op., 8/11/25, at 2 (some formatting altered).

Following our review of the record, we find no abuse of discretion by the trial court. *See E.R.*, 129 A.3d at 527; *see also R.L.*, 209 A.3d at 395. In her brief, Mother attempts to dictate the amount of weight the trial court should have placed on the evidence and asks that we apply her preferred credibility determinations in place of those made by the trial court. *See R.M.G., Jr. v. F.M.G.*, 986 A.2d at 1237 (citation omitted); *see also M.J.M.*, 63 A.3d at 336 n.6. However, because there is no indication that the trial court's findings were "manifestly unreasonable or the product of partiality, prejudice, bias or ill will," we discern no abuse of discretion by the trial court.[3]

_____

[3] To the extent that Mother argues that there was no basis in the record for the trial court to find that Mother had a validated GPS referral, we agree that Mr. Braddick's testimony established that, after an investigation, the GPS referral for Mother was deemed invalid. Mother's Brief at 45; *see also* R.R.
*(Footnote Continued Next Page)*

*R.L. v. M.A.*, 209 A.3d at 395; *see also E.R.*, 129 A.3d at 527; *M.J.M.*, 63 A.3d at 336 n.6; *Wilson*, 284 A.3d at 520.

Finding no merit to Mother's claims, we affirm the order below.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/18/2026

---

142a-48a (we may cite to the parties' reproduced records for the parties' convenience). Nonetheless, because the trial court relied on other facts supported in the record for its conclusion that custody should be modified to serve Child's best interests and, further, because the trial court expressly found Mother's "evidence to change custody to be incredible," we conclude that this fact-finding error does not rise to an abuse of discretion. Trial Ct. Op., 8/11/25, at 2; *see also R.L.*, 209 A.3d at 395. Further, the custody order – which maintained the parties' shared physical custody arrangement and reduced the frequency of Child's transitions between households – is not "unreasonable in light of the sustainable findings of the trial court." *E.R.*, 129 A.3d at 527 (holding that an appellate court may reject a trial court's conclusions "only if they are . . .unreasonable in light of the sustainable findings of the trial court").