J-S39040-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MICHAEL TORNATORE JR. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SOPHIA RODEZNO | : | |
| | : | |
| Appellant | : | No. 823 WDA 2024 |

Appeal from the Order Entered June 12, 2024
In the Court of Common Pleas of Clearfield County Civil Division at
No(s): 2021-1430-CD

BEFORE: DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.: **FILED: FEBRUARY 27, 2025**

Sophia Rodenzo (Mother) appeals[1] from the order denying her petition for special relief and maintaining the prior custody orders that granted primary physical custody of M.T. (Child) to Michael Tornatore Jr. (Father) and partial custody to Mother. Mother argues that the trial court abused its discretion

---

[1] We note that Mother appealed from the order dated and entered June 12, 2024, which states that "[t]he Custody Orders dated April 11, 2023, May 2, 2023, and August 24, 2023 shall remain in full force and effect" and that "[a][s]tatus [c]onference shall be scheduled before the beginning of the 2024-2025 school year to determine which school will best meet the needs of [] Child." Trial Ct. Op. & Order, 6/12/24, at 11. On August 23, 2024, this Court issued a rule to show cause as to the appealability of the June 12, 2024 order in light of the fact that the trial court indicated its intent to schedule a status conference "before the beginning of the 2024-2025 school year to determine which school will best meet the needs of [] Child." ***See id.*** After Mother filed a comprehensive response, this Court discharged the show-cause order. ***See*** Order, 8/30/24. On this record, because the June 12, 2024 order specifically determined and directed custody of Child, we conclude that the order is appealable. ***See Parker v. MacDonald***, 496 A.2d 1244, 1247 (Pa. Super. 1985).

and failed to properly consider the relevant custody factors and the evidence presented at the custody hearing. We affirm.

The trial court summarized the underlying facts of this matter as follows:

The current controversy in this case began with Mother filing a petition for special relief on November 20, 2023. At the time of the filing, Father had primary physical custody of [] Child subject to Mother's periods of partial custody. In her petition, she avers that while [] Child was residing with Father, Mother learned that [] Child's older sister [(S.T.)] pleaded guilty to sexually assaulting [] Child and [that] Child and [S.T.] were still residing together and attending the same school. Mother requested this court to enter an order pending custody trial allowing [] Child to reside primarily with Mother.

A custody pre-trial conference and custody trial were previously scheduled for December 21, 2023, after the court ruled on Mother's previous petition for contempt/special relief on August 24, 2023. After Mother filed her November petition for special relief, the court promulgated an order scheduling a hearing on the petition for the date set for trial.

Trial Ct. Op. & Order, 6/12/24, at 1 (some formatting altered).

The trial court held hearings on December 21, 2023 and January 29, 2024. At that time, the trial court heard testimony from Mother, Father, and Child's paternal grandmother. Mother testified that she was concerned that S.T.'s crimes against Child had been "underplayed and normalized" and that Child had been "forced to interact with [S.T.] at home and in school." N.T. Hr'g, 12/21/23, at 33. Mother also alleged that Child was not adequately supervised while he was in Father's care. *Id.* at 33-35. Further, Mother stated that Father had refused to take Child to the parties' agreed-upon counselor at

CenClear and instead unilaterally found a new counselor, Lisa Woods, without Mother's consent. *Id.* at 41-42.

Father testified that he and Mother "definitely did not agree on CenClear" and instead "agreed on the quickest possible counselor," which was Lisa Woods. *Id.* at 101-102. Although Father acknowledged that he was held in contempt for failing to find a counselor prior to July of 2023, he indicated that Child has seen Ms. Woods once a week since August of 2023. *Id.* at 70. Father testified that Child was expelled from his prior school due to behavioral issues, but that that Child's behavior had improved since he has been in counseling, has received good grades, and has had a stable year at his current school, Soaring Heights. *Id.* at 64, 86-87. Father testified that S.T. does not live in his home, and instead resides with Child's paternal grandmother. *Id.* at 74. Father indicated that Child is consistently supervised when he visits paternal grandmother's home. *Id.* at 74. Additionally, Father stated that Child never expressed any fear about S.T., that "[t]hey get along very well," that the sexual abuse "happened a long time ago," and that "they've never had an issue" since that time. *Id.* at 75-76.

Child's paternal grandmother testified that Child consistently spends time in her home, where she resides with her husband, two adult children, and S.T. *Id.* at 125. Paternal grandmother confirmed she supervises Child when he is in her home and that Child has never been left with S.T. while unsupervised. *Id.* at 126.

Ultimately, the trial court concluded that it was in Child's best interest for Father to maintain primary physical custody for the remainder of the school year and issued an order stating that the court's prior custody orders would remain in effect. *See* Trial Ct. Op. & Order at 11.

Mother filed a timely notice of appeal and a simultaneous Pa.R.A.P. 1925(b) statement. In lieu of a Rule 1925(a) opinion, the trial court adopted its June 12, 2024 order and opinion.

On appeal, Mother raises the following issues:

1. Did the trial court abuse its discretion and commit an error of law by granting Father primary physical custody of . . . Child when there is a continued risk of harm to [] Child and in failing to give proper weight to Father's testimony minimizing [] Child's sexual abuse, lack of adequate safeguards, and [] Child's behaviors following sexual trauma?

2. Did the trial court abuse its discretion and commit an error of law by granting father primary physical custody of . . . Child in failing to give proper weight to all factors pursuant to 23 Pa.C.S. § 5328 affecting [] Child's best interest and against the weight of the evidence presented at trial?

3. Did the trial court abuse its discretion and commit an error of law by granting Father primary physical custody of . . . Child in failing to consider Father's history of contempt and repeated disobedience of custody orders?

Mother's Brief at 7.

Because Mother's issues are interrelated, we address them together. In all three of her claims, Mother argues that the trial court abused its discretion by allowing Father to retain primary physical custody of Child. Specifically, Mother notes that Child was previously raped by his older sister, S.T., and

alleges that there is a "continued risk of harm" to Child because he has regular contact with S.T. *Id.* at 17. Mother also contends that the trial court failed to properly weigh the custody factors affecting Child's best interests and the evidence presented at the hearing. *Id.* at 22. Finally, Mother argues that the trial court failed to consider Father's history of contempt and failure to follow the court's prior custody orders and that the trial court "acted unreasonably in failing to consider Father's actions as against the best interests of [] Child." *Id.* at 44, 45-46.

In custody cases under the Child Custody Act (the Act), 23 Pa.C.S. §§ 5321-5340, our standard of review is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*E.R. v. J.N.B.*, 129 A.3d 521, 527 (Pa. Super. 2015) (citation omitted); *see also R.L. v. M.A.*, 209 A.3d 391, 395 (Pa. Super. 2019). This Court has consistently held that

> the discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial

court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (citation omitted).

In addition,

[a]lthough we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

*M.A.T. v. G.S.T.*, 989 A.2d 11, 18-19 (Pa. Super. 2010) (*en banc*) (citations omitted); *see also Taylor v. Smith*, 302 A.3d 203, 207 (Pa. Super. 2023) (defining abuse of discretion as when a trial court overrides or misapplies the law or reaches a conclusion that is the result of partiality, prejudice, bias, or ill will).

The paramount concern in any custody case decided under the Act is the best interests of the child. *See* 23 Pa.C.S. §§ 5328(a), 5338(a). "The best interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral[,] and spiritual well-being." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (citation omitted). Section 5328(a) sets forth the best interest factors that the trial court must consider in awarding custody. *See E.D. v. M.P.*, 33 A.3d 73, 79-80 & n.2 (Pa. Super. 2011).

Section 5328(a) of the Act provides as follows:

**§ 5328.  Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).[2]

Although the trial court is required to give "weighted consideration to those factors which affect the safety of the child," this Court has acknowledged that the amount of weight a trial court gives any one factor is almost entirely discretionary. ***M.J.M. v. M.L.G.***, 63 A.3d 331, 338-39 (Pa. Super. 2013).

Critically, this Court has explained that

[i]t is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case. ***See A.D. v. M.A.B.***, 989 A.2d 32, 35-36 (Pa. Super. 2010) ("In reviewing a custody order . . . our role does not include making independent factual determinations. . . . In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand.").

---

[2] These are the custody factors that were in effect at the time the trial court made its decision. Effective August 13, 2024, Section 5328(a) was subsequently reordered and amended. ***See*** 23 Pa.C.S. § 5328, *amended by* Act of April 15, 2024, P.L. 24, No. 8, § 3 (effective in 120 days).

***M.J.M.***, 63 A.3d at 339.

Here, the record reflects that the trial court complied with 23 Pa.C.S. § 5328(a) by discussing all of the custody factors in its June 12, 2024 order and opinion. ***See*** Trial Ct. Op. & Order at 2-10. Specifically, the trial court found that Section 5328(a)(2) weighed in Mother's favor, while Section 5328(a)(4), (7), (8), and (16) weighed in favor of Father. ***Id.*** Additionally, the trial court found that Section 5328(a)(1), (3), (5), (6), (9), (10), (12), (13), (14) weighed equally between the parties. ***Id.*** The trial court also concluded that Section 5328(a)(15), was inapplicable in this case. ***Id.***

With respect to Mother's claim concerning the "risk of continued" harm to Child, the trial court explained:

> **2. The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.**
>
> **2.1. The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services.**
>
> This factor slightly favors Mother. In the past, [] Child was sexually assaulted and raped by [] Child's older sister, [S.T.]. The assaults occurred when [S.T.] and [] Child resided with Father. It is uncertain how long the assault had gone on; however, [S.T.] was charged as a juvenile for the offenses in 2023. Mother avers that she is the party who can better provide adequate physical safeguards and supervision of [] Child. Mother cites to the fact that Father allows nearly daily contact between [] Child and [S.T.], and he is not there to supervise or otherwise ensure that the contact is appropriate; Father allows [] Child to spend overnights with [S.T.]; Father does not know whether [] Child and [S.T.] are allowed to have contact and has not contacted probation to find

out; and Father has not spoken to the school about contact between [Child and S.T.]

Mother avers that there are virtually no safeguards. However, this statement disregards Paternal Grandmother's testimony completely. First, [S.T.] lives with Paternal Grandmother, not with Father and [] Child. Any time [] Child goes to Paternal Grandmother's house and is in the vicinity of [S.T.], Paternal Grandmother supervises those visits. Further, Father testified to checking in on [] Child during overnight stays and generally finds [] Child asleep on the sofa or recliner and Paternal Grandmother sleeping downstairs on the couch. Clearly, there are some safeguards in place to protect [] Child from the chance of another abusive encounter.

Mother argues that there is a continued risk of harm as [Child and S.T.] have daily contact at school, evenings, and weekends. Although the court appreciates Mother's concerns, the court, finds it significant that [] Child has not mentioned any concern regarding [S.T.] to his counselor or to the Guardian *ad litem*. Therefore, while this factor slightly favors Mother based upon the fact that [] Child would not come into contact with [S.T.] if he was in Mother's custody, the safeguards Father has implemented are not so weak and the risk of abuse is not so great as to assign significant weight to this factor.

Trial Ct. Op. & Order at 2-3 (citations omitted and some formatting altered).

Additionally, the trial court explicitly addressed Father's behavior throughout the custody proceedings and noted that "[i]nitially, Father was found to be in contempt of [a] court order when he failed to select a counselor with Mother," but that since that time, "Child has been attending his sessions and progressing both educationally and emotionally." *Id.* at 8 (some formatting altered).

Ultimately, the trial court explained:

It is the opinion of this court that the best interest of [] Child would be served by Father maintaining primary physical custody during the school year. [] Child has been doing exceedingly well at

- 10 -

> Soaring Heights Academy, due not only to the school, but the stability and continuity found within the current custody order. [] Child is happy with the current order, has not expressed any concern regarding [S.T.], and Father and Paternal Grandmother have created adequate safeguards to protect [] Child from any potential abuse. The week on/week off schedule shall continue during the summer and the parties shall attempt to reconcile their differences, in order to serve the best interests of [] Child.

*Id.* at 10-11 (some formatting altered).

Following our review of the record, we discern no abuse of discretion or error of law by the trial court. The trial court's factual findings are supported by competent evidence and the trial court's legal conclusions are not unreasonable in light of that evidence. *See E.R.*, 129 A.3d at 527. Although Mother claims that the trial court failed to "give proper weight" to the custody factors, Father's testimony, or Father's prior conduct, we will not revisit the trial court's conclusions or substitute our judgment for that of the finder of fact. *See E.R.*, 129 A.3d at 527; *M.J.M.*, 63 A.3d at 339; *see also King v. King*, 889 A.2d 630, 632 (Pa. Super. 2005) (reiterating that "[i]t is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, [giving] due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion . . . ." (citation omitted)). For these reasons, Mother is not entitled to relief. Accordingly, we affirm.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 2/27/2025