J-S29001-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ANTHONY T. PARIS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NICOLE M. PARIS | : | |
| | : | |
| Appellant | : | No. 529 WDA 2025 |

Appeal from the Order Entered April 3, 2025
In the Court of Common Pleas of Bedford County Civil Division at No(s):
1542 for the year 2012

BEFORE:  NICHOLS, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY NICHOLS, J.:                **FILED: October 15, 2025**

Appellant Nicole M. Paris (Mother) appeals from the custody order granting Anthony T. Paris (Father) primary physical custody and Mother partial physical custody of the parties' thirteen-year-old child, A.P. (Daughter). Mother argues that the trial court lacked reasonable evidence to award Mother only partial physical custody where a prior custody order had awarded the parties shared physical custody.  We affirm.

The relevant facts and procedural history of this matter, as summarized by the trial court, follows:

> [Father] and [Mother] are the natural parents of two minor children, [T.P.], born [in] August [of] 2007 [(Son)][1] and

---

[1] We note that Son turned eighteen years of age in August of 2025 during the pendency of this appeal.  Accordingly, Son has attained the age of majority and is, therefore, no longer subject to parental custodial litigation.  ***See*** 23 Pa.C.S. §§ 5101 (attainment of full age), 5202 (defining "child").

[Daughter], born in January [of] 2012 . . . . The case commenced . . . in 2012.

\* \* \*

[O]n December 14, 2022, the Blair County Court entered an order continuing the shared physical custody arrangement for [Daughter] and Mother exercising continued visits with [Son] on Sundays . . . as well as other times by mutual agreement.

The instant litigation commenced when Mother filed a petition for contempt and special relief on July 22, 2024 in Blair County[] regarding [Daughter]. Mother's [contempt] petition alleged and the evidence supported the fact that during 2023, [Son] began spending more time with Mother and eventually began living with [Mother] full-time, although the parties did not return to court to update the custody order. [Son] has rarely visited with Father in the intervening two years. The parties continued to share physical custody of [Daughter] until December of 2023. Thereafter, despite the order granting shared physical custody of [Daughter], she began living primarily with Father and rarely saw Mother. At a conference in Blair County on September 23, 2024, the parties agreed that they had not been following the terms of the prior custody order and that the appropriate venue for the case would be Bedford County and the matter was transferred accordingly. Following the transfer, Mother filed a petition for modification of the custody order in Bedford County on November 20, 2024. In her petition, Mother [sought] to revert back to shared (50/50) physical custody of [Daughter], [having] only seen [Daughter] three times since December [of] 2023, with each visit only lasting one to two hours.

A custody conference was held on January 27, 2025, whereupon an evidentiary hearing was scheduled and [the trial] court entered an interim custody order to reflect the current arrangement for both [Son] and [Daughter]. A custody evidentiary hearing was held on April 2, 2025, whereupon each parent testified and the [trial court] interviewed [Daughter].

Following the hearing, the [trial court] entered an order [on April 3, 2025] indicating that . . . Father will retain primary physical

custody of [Daughter][2] and Mother will begin seeing [Daughter] on a slowly increasing basis with the goal of rebuilding their fractured relationship in a measured, emotionally appropriate fashion. . . . The [trial court] further ordered that [Daughter] be enrolled in a program of therapeutic counseling and that both parties cooperate with any recommendations of the counselor.

On May 1, 2025, Mother filed both a post-trial motion for reconsideration and a notice of appeal. On May 5, 2025, [the trial court] denied Mother's post-trial motion for reconsideration.

Trial Ct. Op., 5/15/25, at 1-4 (footnote omitted and some formatting altered).

Both Mother and the trial court complied with Pa.R.A.P. 1925.

On appeal, Mother raises the following issue:

Whether the [trial] court erred and abused its discretion in awarding primary custody of [Daughter] to [] Father rather than continuing the equally shared schedule previously awarded without any reasonable evidence to support that change?

Mother's Brief at 5.

Mother argues that the trial court's "conclusions are unreasonable as shown by the evidence of record" and that the trial court therefore abused its discretion in denying Mother's request for shared physical custody of Daughter. *Id.* at 12-17. Specifically, Mother contends that the trial court failed to articulate why awarding Mother shared physical custody would cause harm to Daughter's "stability and continuity in family life, community, etc.[,]" given that the parties had "exercised a week on week off" schedule for the majority of Daughter's life. *Id.* at 14. Mother also claims that the trial court

---

[2] We note that in the same custody order the trial court awarded Mother primary physical custody of Son. *See* Trial Ct. Order, 4/3/25, at 1 (unpaginated).

- 3 -

should have found, based on Mother's testimony, that Father posed a safety concern to Daughter and that Mother is the parent "most likely to encourage and permit continuing contact with the other parent." *Id.* at 13. Mother asserts that "it doesn't seem like the [trial] court took [] into consideration" Mother's testimony of Father's attempts to turn Daughter against Mother. *Id* at 14. Mother contends that the trial court "should have [placed] more emphasis on the proximity of the [parties'] residences" to award shared custody rather than merely noting "that the distance will not hamper Mother's ability to exercise custody." *Id.* at 15. Mother argues that the trial court's conclusion that there was "conflict between the parties" affecting the "ability to cooperate with one another" was contradicted by the trial court's own statements. *Id.* (citing N.T., 4/2/25, at 109-110). Mother claims that the trial court improperly "put a lot of weight" on Mother's failure to seek court intervention when Daughter first began to reside exclusively with Father, in violation of the then-existing custody order, despite the fact that "the trial court accepted [Mother's] testimony" explaining her reasons for this delay. *Id.* (citing N.T., 4/2/25, at 49-50). Accordingly, Mother urges us to find that the trial court's order is "unreasonable in light of the evidence of record." *Id.* at 17.

> Pursuant to the Child Custody Act (the Act), 23 Pa.C.S. §§ 5321-5340:
>
> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility

and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*E.R. v. J.N.B.*, 129 A.3d 521, 527 (Pa. Super. 2015) (citation omitted); *see also R.L. v. M.A*., 209 A.3d 391, 395 (Pa. Super. 2019). This Court has consistently held that

the discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (citation omitted).

In addition, this Court has explained:

Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

*M.A.T. v. G.S.T.*, 989 A.2d 11, 18-19 (Pa. Super. 2010) (*en banc*) (citations omitted); *see also Taylor v. Smith*, 302 A.3d 203, 207 (Pa. Super. 2023) (defining abuse of discretion as when a trial court overrides or misapplies the law or reaches a conclusion that is the result of partiality, prejudice, bias, or

ill will). In reviewing custody appeals, we are mindful that "[i]t is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, [giving] due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion[.]" *King v. King*, 889 A.2d 630, 632 (Pa. Super. 2005) (citation omitted); *see also E.R.*, 129 A.3d at 527 (explaining that this Court will not disturb a trial court's findings of fact or determinations regarding witness credibility or the weight of the evidence).

The paramount concern in any custody case decided under the Act is the best interests of the child. *See* 23 Pa.C.S. §§ 5328(a), 5338(a). "The best interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral[,] and spiritual well-being." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (citation omitted). Section 5328(a) sets forth the best interest factors that the trial court must consider in awarding custody. *See E.D. v. M.P.*, 33 A.3d 73, 79-80, 79 n.2 (Pa. Super. 2011).

Section 5328(a) of the Act provides as follows:

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.—**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving substantial weighted consideration to the factors specified under paragraphs (1), (2), (2.1) and (2.2) which affect the safety of the child, including the following:

(1) Which party is more likely to ensure the safety of the child.

- 6 -

(2) The present and past abuse committed by a party or member of the party's household, which may include past or current protection from abuse or sexual violence protection orders where there has been a finding of abuse.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(2.2) Violent or assaultive behavior committed by a party.

(2.3) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party if contact is consistent with the safety needs of the child.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life, except if changes are necessary to protect the safety of the child or a party.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's developmental stage, maturity and judgment.

(8) The attempts of a party to turn the child against the other party, except in cases of abuse where reasonable safety measures are necessary to protect the safety of the child. A party's reasonable concerns for the safety of the child and the party's reasonable efforts to protect the child shall not be considered attempts to turn the child against the other party. A child's deficient or negative relationship with a party shall not be presumed to be caused by the other party.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child or self from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).[3]

Pursuant to Section 5328(a), while a trial court must give "weighted consideration to those factors which affect the safety of the child," the amount of weight a trial court gives any one factor is almost entirely discretionary. *M.J.M. v. M.L.G.*, 63 A.3d 331, 338-39 (Pa. Super. 2013). It is well-settled that

> [i]t is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case. *See A.D. v. M.A.B.*, 989 A.2d 32, 35-36 (Pa. Super. 2010) ("In reviewing a custody order . . . our role does not include making independent factual determinations. . . . In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand.").

_____

[3] This version of the Section 5328(a) custody factors was in effect from August 13, 2024 to August 28, 2025, including at the time the trial court made its decision. *See* 23 Pa.C.S. § 5328, *amended by* Act of April 15, 2024, P.L. 24, No. 8, § 3 (effective in 120 days). We note that our legislature recently amended Section 5328(a) and these amendments went into effect on August 29, 2025. *See* Act of June 30, 2025, P.L. 18, No. 11 (effective in 60 days).

***M.J.M.***, 63 A.3d at 339.

Here, the trial court directs our attention to relevant portions of the notes of testimony for its "factor analysis and rationale stated in open court at the hearing." Trial Ct. Op., 5/15/25, at 5 (citing N.T., 4/2/25, at 95-125). More broadly, the trial court explains that it took into account

> that the parties had not followed the terms of the prior custody order granting shared physical custody of [Daughter] since December [of] 2023. Rather, the evidence clearly established that [Daughter] exclusively lived with Father since December [of] 2023. . . . Mother only saw [Daughter] three times for a few hours during that one-and-a-half year period. [The trial court] applied the custody factors to the facts and awarded Mother progressively increasing periods of partial custody of [Daughter], along with counseling such that a reunification with Mother may occur in an emotionally and mentally appropriate way for [Daughter].

***Id.*** at 4-5.

Based on our review of the record, we discern no abuse of discretion in the trial court's findings regarding the Section 5328(a) custody factors. ***See E.R.***, 129 A.3d at 527; ***King***, 889 A.2d at 632. Mother does not dispute that the trial court considered the custody factors prior to entering the order appealed. Rather, Mother essentially argues that she would have arrived at a different conclusion on the same evidence, giving more weight to her own testimony and her interpretation of the evidence. We decline Mother's invitation to reweigh the evidence to craft an alternative custody award based on the Section 5328 factors. ***See King***, 889 A.2d at 632 (explaining that when reviewing the trial court's decision for an abuse of discretion, "[i]t is not

- 9 -

this Court's function to determine whether the trial court reached the 'right' decision" (citation omitted)); ***see also Ketterer***, 902 A.2d at 540.

To the extent that Mother claims that the trial court's finding that the level of conflict between Mother and Father and their ability to work together weighed against Mother is not supported by the record, we disagree. Mother's quotations from the notes of testimony are provided out of context and cherry-pick statements to create an impression that is not supported by the complete record. Here, the record reflects that the trial court noted that Mother and Father do not currently communicate well with each other but also noted with approval an incident in which the parties put aside their differences to appropriately parent Son and, further, expressed the hope that their "ability to cooperate and work together" would "increase and improve." N.T., 4/2/25, at 109-110.[4] Furthermore, with regard to Mother's claim that the trial court

---

[4] The trial court's relevant findings regarding this custody factor are as follows:

> Well, I don't really know that there's any conflict between you two. You don't communicate, right? If you don't talk to someone, well then you aren't fighting with them. Sometimes that's the best we can do in a custody case. But I will state that that's a real shame.

> . . . I didn't really hear any testimony of any current conflicts between the parties, but it is clear you both agree, you don't communicate well. You probably don't really want to communicate with each other but it does need to improve. That's why I asked those questions about . . . [Son's] injury at a football game. . . . I'm sure it was awkward when you were both there at the same time, but you put it aside . . .

*(Footnote Continued Next Page)*

erred by finding that Mother's delay in asserting her custodial rights weighed against her after the trial court agreed that Mother's explanation for the delay was reasonable, we conclude that Mother's interpretation of the trial court's statements is not supported by the record. The record reflects that the trial court merely acknowledged Mother's testimony rather than indicating approval of or agreement with Mother's testimony. *See* N.T., 4/2/25, at 50-51.[5] Therefore, we conclude that the trial court's conclusions are supported by the record. *See E.R.*, 129 A.3d at 527; *M.A.T.*, 989 A.2d at 19.

---

> The fact that you both were there, you both cared enough to be there. You put your differences aside . . . [R]egardless of your history, which probably is somewhat difficult, I think that you do have the ability to cooperate and work together. I would like to see it increase and improve, but I think when it really comes down to it, you folks are able to do that, which is good.

N.T., 4/2/25, at 109-110.

[5] Mother's explanation – and the trial court's response –, for why she waited to seek court intervention after Daughter chose to reside exclusively with Father in violation of the then-custody order, is as follows:

> Mother: [Son] went through the same thing and I had taken or we went to court for [Son] and one of the things [Son] told me was that he hated how I kind of drug him through court all the time. I don't want to do that to [Daughter]. I wanted to try to give her some time, because I felt like it wasn't really a justified reason to not talk. So, I felt like maybe if I just gave her some time, that she would come around. So, I didn't want to just keep taking them back to court all the time.
>
> Trial court: Okay. Is it a fair statement to say, your way of handling that was to try and just give her some time, like you

*(Footnote Continued Next Page)*

For the reasons stated above, we discern no abuse of discretion or error of law in the trial court's findings regarding the custody factors under Section 5328(a), nor the trial court's resulting award of custody. Accordingly, we affirm the trial court's order.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

10/15/2025

---

said, but then that has turned into, now it's been quite a long time you are not seeing her?

Mother: Right.

Trial Court: Okay. I think I understand.

N.T., 4/2/25, at 50-51 (some formatting altered).